**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0110n.06
Filed: February 20, 2008

**No. 07-5271**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CORNELL P. GUNTER,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

_____/


**BEFORE:**    **SILER, CLAY and COOK, Circuit Judges.**

    **CLAY, Circuit Judge.** Defendant Cornell P. Gunter appeals his conviction, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), for possession with intent to distribute more than five grams of crack cocaine, and his conviction, under 18 U.S.C. § 924(c)(1)(B)(i), for possession of short-barreled shotgun in furtherance of a drug trafficking crime. Specifically, Defendant argues that a warrant authorizing a search of his residence was not supported by probable cause. Because the affidavit describes a thorough investigation of Defendant, sufficient to establish probable cause to search his home, we **AFFIRM** Defendant's conviction.

**STATEMENT OF FACTS**

1

While conducting an investigation of Defendant Cornell Gunter, Tennessee law enforcement officers spoke with a confidential informant, who told them that he could potentially purchase cocaine from Defendant; and on September 22, 2005, the informant placed a call to Defendant to arrange a purchase. Agents of the Tennessee Bureau of Investigation ("TBI") monitored this call as the informant arranged to meet with Defendant later that day.

Under the supervision of the TBI, the informant made a controlled purchase of cocaine from Defendant. Prior to the purchase, agents searched the informant's person and vehicle to be certain he was not carrying any controlled substances. The agents then provided the informant with a covert transmitter and listened as the informant purchased approximately two ounces of cocaine from Defendant. Upon completion of the transaction, the informant turned this cocaine over to the agents.

Four days later, a TBI agent conducted a driver's license and vehicle registration inquiry on Defendant. This inquiry revealed Defendant's address in Niota, Tennessee, and indicated that he owned several vehicles, including a Dodge RT and two Cadillacs.

On September 27, 2005, the TBI arranged another controlled purchase utilizing a confidential informant. While TBI agents were surveilling the Niota residence, the informant called Defendant to arrange the cocaine purchase. TBI agents monitored this call as Defendant told the informant that he was traveling, but would meet the informant in nearby Athens, Tennessee. Around the same time as this phone call, the agents watching Defendant's Niota residence observed a green Cadillac, driven by Defendant, arriving at that residence. The Cadillac remained at the residence for two to three minutes. TBI agents then followed the Cadillac as it stopped at another residence, and

eventually traveled to the site of the controlled purchase. Like the first purchase, this controlled purchase was also monitored via transmitter by the TBI.

The next day, TBI Special Agent Bryan Freeman sought a warrant to search Defendant's residence for drugs, evidence of drug transactions and firearms. In addition to setting out the above facts in an affidavit accompanying the warrant application, Agent Freeman also described his significant experience in narcotics investigations, including over 100 investigations into drug trafficking, and stated that in his experience "individuals involved in drug trafficking frequently conceal, in their residence . . . caches of illicit drugs, large amounts of Unites [sic] States currency and/or other illicit proceedings of drug transactions, as well as records of drug transactions." (J.A. 34.) A photo of Defendant's residence was also included in the affidavit to indicate the premises to be searched. Based on this affidavit, a Tennessee state judge issued a warrant to search Defendant's home. The ensuing search uncovered narcotics, cash and firearms, as well as drug paraphernalia in a Cadillac parked outside the residence.

## DISCUSSION

### *Standard of Review*

When reviewing a denial of a motion to suppress evidence, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998). In reviewing the decision of the magistrate issuing the search warrant, however, "we consider the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

*Analysis*

A warrant to search a residence may not issue except "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. To secure a search warrant, law enforcement must present a neutral magistrate "evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the 'veracity' and 'basis' of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Defendant alleges that the warrant affidavit in this case failed to establish probable cause because it failed to establish the reliability of the confidential informants' statements to police. Additionally, Defendant claims that the affidavit did not demonstrate a sufficient nexus between his drug trafficking and his residence to allow a search of that residence. We disagree.

## A.      The Reliability of the Confidential Informants

When, as here, a warrant affidavit provides no indicia of an informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). Such independent corroboration may be established, however, by a police monitored, controlled purchase, such as the two which occurred in this case.

In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), this Court considered a similar case involving a confidential informant and a controlled purchase. The police in that case were told by an informant that he had purchased drugs from the *Coffee* defendant. *Id.* at 893. Based on that information, the police executed a controlled purchase similar to the one in the instant case. The

informant was searched and made to wear a transmitter. *Id.* at 891. Police then monitored via the transmitter a conversation between the informant and the *Coffee* defendant, and their ensuing drug transaction. *Id.* Afterwards, police confiscated the drugs from the informant. *Id.* Based on this controlled purchase, we concluded that the informant's reliability in *Coffee* was sufficiently corroborated, and thus rejected the defendant's claim that the warrant affidavit did not demonstrate probable cause. *Id.* at 894–95.

In the instant case, the TBI conducted not just one but two controlled purchases, using similar procedures to those used by the police in *Coffee*. If one such purchase was sufficient to corroborate an informant's statements in *Coffee*, then two purchases will more than suffice in the instant case. Accordingly, we hold that the warrant affidavit was not deficient for failing to establish the reliability of an informant.

**B.      The Nexus Between Defendant's Drug Trafficking and His Residence**

Defendant next argues that, as the warrant affidavit only described drug sales outside his residence, it failed to establish a sufficient nexus between his illegal activity and his residence to allow a search of that residence. *See Frazier*, 423 F.3d at 532 ("There must be a 'nexus between the place to be searched and the evidence to be sought.'" (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). To establish such a nexus, a warrant application must show more than just that "the owner of the property is suspected of crime," but instead must establish "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). The mere

fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home. *See Frazier*, 423 F.3d at 533.

Defendant argues that the warrant affidavit failed to establish a nexus between his residence and his drug trafficking because the confidential informant "provided no reliable information to establish a nexus and the facts fail to establish any such nexus as well." (Plaintiff's Br. at 17.) As the district court correctly noted, the best case for Defendant's position is this Court's decision in *Frazier*. *Frazier* involved a federal investigation of a drug conspiracy involving about 25 people. 423 F.3d at 530. Law enforcement agents learned that the *Frazier* defendant was involved in drug trafficking through confidential informants, who also informed them that the defendant was selling drugs from his home. Although the agents conducted several controlled purchases to establish the reliability of their informants, they neglected to mention in their affidavit accompanying the application for a warrant that these purchases were recorded via transmitter. *Id.* Lacking such corroboration of the informant's reliability, we held that when "the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants . . . the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Id.* at 533.

*Frazier*, however, is distinguishable from previous Sixth Circuit cases which upheld a search of a drug dealer's residence even though police observed no illegal activity at that residence. In *United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002), for example, police arrested one member of a drug conspiracy when he signed for a package under the assumed name "Darnel Smith." *Id.* at 393. The package was addressed to "Tommy Lee," and the sender was "Keith Jackson," both assumed

6

names of his co-conspirators. *Id.* In a search pursuant to their arrest of the so-called "Darnel Smith," police discovered a piece of paper which listed all three assumed names along with an address, which turned out to be the defendant's residence. Noting the discovery of this address along with aliases associated with the drug conspiracy, we held that police had probable cause to search the defendant's residence. *Id.*

Similarly, in *United States v. Caicedo*, 85 F.3d 1184 (6th Cir. 1996), we upheld a warrant authorizing a search of a residence despite only a limited connection between the residence and drug related activity. The *Caicedo* defendant was arrested while traveling with a friend who was carrying cocaine in his backpack. *Id.* at 1193. While he was being questioned by police, the defendant lied about his address. *Id.* Given this lie, we held that a warrant affidavit sworn by an experienced narcotics officer, which stated that "the reason for hiding the correct residence *could be* that further evidence *may be* located at this location which *could be* used against Ryan in this particular investigation," established a sufficient nexus between the defendant and his residence to allow a search of that residence. *Id.* (emphasis in original).

Reading *Frazier*, *Miggins* and *Caicedo* together, this Court's precedents establish that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence. *See, e.g.*, *Miggins*, 302 F.3d at 393; *Caicedo*, 85 F.3d at 1193. When, however, the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence. *Frazier*, 423 F.3d at 533.

Applying this framework to the instant case, we conclude that the instant warrant affidavit described sufficient facts to establish a nexus between Defendant's drug trafficking and his residence. The warrant affidavit described the investigating law enforcement agent's significant experience in narcotics investigations—including over 100 investigations into drug trafficking—and stated that in that agent's experience drug dealers typically keep evidence of their crime in their residence. Moreover, unlike *Frazier*, where the warrant affidavit relied entirely on statements of confidential informants to establish a connection between the defendant and his residence, the instant affidavit describes an incident where law enforcement agents observed Defendant visiting his residence right before he traveled to the site of a drug sale. This visit provided a neutral magistrate with a substantial basis to conclude that Defendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location. This evidence, combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's illegal activities and his residence. *See Caicedo*, 85 F.3d at 1193. Accordingly, we affirm the decision of the district court admitting evidence seized in the search of Defendant's residence.

Because we hold that probable cause supported the warrant, we do not address Defendant's challenge to the district court's alternative grounds for denying suppression—the good-faith exception to the probable cause requirement.

**CONCLUSION**

The warrant to search Defendant's home was issued upon probable cause. The warrant affidavit described sufficient evidence to corroborate statements by confidential informants and the

affidavit showed a nexus between Defendant's illegal activities and his residence.  Accordingly, we

**AFFIRM** Defendant's conviction.