*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0378p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DAVID WILLIAMS,

*Defendant-Appellant.*

No. 06-2018

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-80403-001—Robert H. Cleland, District Judge.

Argued: March 11, 2008

Decided and Filed: October 16, 2008

Before: SILER, MOORE, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Bradley R. Hall, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Graham Leslie Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Bradley R. Hall, Jonathan Miles Epstein, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Graham Leslie Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

SILER, J., delivered the opinion of the court, in which McKEAGUE, J., joined. MOORE, J. (pp. 8-12), delivered a separate dissenting opinion.

---

## OPINION

---

SILER, Circuit Judge. In 2004, police officers in Detroit, Michigan executed a search warrant at a residence, where they arrested Defendant David Williams and seized evidence, including illegal drugs and a firearm. Based on this evidence, Williams was indicted for possession of a controlled substance with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. Williams moved to suppress the seizure of the drugs and firearm. After the district court denied that motion, Williams entered a conditional plea of guilty to both crimes.

Williams now appeals the denial of his motion to suppress the evidence seized during the search. He argues that the district court erred in denying his motion because the search warrant that established Williams's illegal use of handguns and identified his apartment did not state any further

connection between Williams and the apartment, and because the search warrant failed to establish probable cause in that it relied on "unreliable, conflicting, and uncorroborated information."

For the following reasons, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Factual Background

In 2004, the Detroit Police Department's Firearm Investigative Team ("FIT") and the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF"), were engaged in a joint investigation, during which they obtained and executed multiple search warrants for residences in Detroit. Officers searched 5950 Hedwig Street on July 12, 2004, which led to a search of 5409 Springwells Street on July 15, 2004. Both locations were residences of Jose Cosme, who owned two firearms seized during the searches. Cosme told the officers that an individual identified as "D-Bird" moved two firearms from the residences just before the searches, namely, a .25 caliber handgun and a .45 caliber handgun. Cosme also told the officers that a few weeks prior to the searches, "D-Bird" robbed a drug trafficker of five pounds of marijuana using one of those handguns. Cosme reported that "D-Bird" lived on Tarnow Street, between Michigan Avenue and the I-94 service drive, and that "D-Bird" drove a silver Monte Carlo car. Cosme's mother, Stella Reinoso, confirmed Cosme's statements to the officers.

On July 16, 2004, officers arrested Kamico Jackson, a known associate of Cosme and "D-Bird." Jackson identified "D-Bird" as Williams and showed the officers Williams's residence. Jackson identified Williams's residence as the upper apartment unit at 4900 Tarnow Street, which corroborated Cosme's description of the address. Jackson also substantiated Cosme's statements to the officers, informing them that he also saw Williams with a .25 caliber handgun and a .45 caliber handgun, that Williams drove a silver Monte Carlo, and that Williams robbed a drug trafficker at gunpoint in the preceding weeks. Jackson also told the officers that police had recently arrested Williams for possessing a stolen vehicle, and that Williams had a gun in his car at the time of his arrest.

On July 17, 2004, Officer Darryl Stewart conducted surveillance at 4900 Tarnow Street, where he saw a silver Monte Carlo. He also observed a man standing next to the Monte Carlo who fit the description of Williams as given by Cosme, Reinoso, and Jackson. On July 22, 2004, Officer Stewart again saw the Monte Carlo at 4900 Tarnow Street, after which he searched police databases using the description of Williams. That search yielded a photograph of Williams, and confirmed that police arrested Williams on June 26, 2004, for carrying a concealed weapon.

On July 23, 2004, Officer Stewart sought and obtained a search warrant for 4900 Tarnow Street. In his warrant application, he alleged that (i) Williams resided in the upper level apartment at 4900 Tarnow Street; (ii) Williams possessed two firearms, a .25 caliber handgun and a .45 caliber handgun; (iii) one month prior to the warrant application, Williams used a .45 caliber handgun to rob five pounds of marijuana from a drug trafficker; (iv) Williams was arrested for carrying a concealed weapon on June 26, 2004; and (v) Williams was recently arrested for possession of a stolen vehicle where a gun was found in the vehicle.

The officers executed the search warrant on July 23, 2004, when they entered the residence through an open, outside back door that led into a common hallway shared by other residents. The officers moved up a common stairwell to Williams's upper-level residence, where through the open door to the residence, they saw Williams cutting crack cocaine on a table. The police then entered the residence, arrested Williams, and searched the residence, which yielded a short-barreled shotgun and cocaine base.

## II. The Procedural Background

Williams was later indicted on charges of possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a short-barreled shotgun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(I). The district court denied Williams's motion to suppress. Williams entered a conditional guilty plea on both charges and was sentenced to 130 months imprisonment.

## STANDARDS OF REVIEW

When reviewing a district court's decision on a motion to suppress, we must uphold the district court's factual findings unless those findings are clearly erroneous, and we review the district court's legal conclusion as to the existence of probable cause de novo. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004) (citing *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). When reviewing the district court's decision we view the evidence in the light most favorable to the government. *Id.* (citing *United States v. Walker*, 181 F.3d 774, 776 (6th Cir. 1999)). We also give great deference to an issuing judge's finding of probable cause in a search warrant application; that decision should be reversed only when it was arbitrary. *Id.* (quoting *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002)); *see also United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) ("The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))).

## DISCUSSION

**I. The district court correctly found that the search warrant established a nexus between Williams's suspected possession of the handguns and his residence sufficient to support the issuing judge's finding of probable cause.**

The Fourth Amendment requires probable cause for a search warrant to issue, *Laughton*, 409 F.3d at 747 (citing U.S. Const. amend. IV; *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)), and requires that a search warrant describe with particularity the place to be searched and the items to be seized, *United States v. Bethal*, 245 F. App'x 460, 464 (6th Cir. 2007) (unpublished decision) (quoting U.S. Const. amend. IV). An issuing judge may find probable cause to issue a search warrant when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Laughton*, 409 F.3d at 747 (quoting *Gates*, 462 U.S. at 238). In order to make this determination, the issuing judge must undertake a "practical, common sense" evaluation of "all of the circumstances set forth in the affidavit before him." *Laughton*, 409 F.3d at 747 (quoting *Gates*, 462 U.S. at 238).

In making this practical, common sense determination, the issuing judge must look for certain criteria. First, the affidavit or warrant request "must state a nexus between the place to be searched and the evidence sought." *Bethal*, 245 F. App'x at 464 (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (quoting *United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1992))) (internal quotation marks omitted); *see United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) ("Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." (internal quotations omitted)); *see also United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (holding that there is no probable cause for a warrant where the affidavit lacked a nexus between the location to be searched and the suspected criminal activity). Second, "[t]he belief that the items sought will be found at the location to be searched must be 'supported by less than prima facie proof but more than mere suspicion.'" *Bethal*, 245 F. App'x at 464 (quoting *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990))).

Neither the issuing judge nor the reviewing courts should engage in line-by-line scrutiny of the warrant application's affidavit. *Id.* at 465; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 246 n.14). Rather, the courts should take a totality of the circumstances approach in their review of the affidavit, and the courts may afford "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [the courts are] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *Id.* (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (citations and internal quotation marks omitted)).

To support his argument that the search warrant lacked probable cause, Williams asserts numerous allegations, the first of which is that the warrant application did not establish a nexus between the targeted handguns and the residence at 4900 Tarnow Street. While Williams correctly asserts that the warrant affidavit never tied the .25 and .45 caliber handguns to the Tarnow Street residence, he overlooks the Government's logical, and indeed legally correct, assertion that "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." Here, the warrant application demonstrated "continuing and related illegal firearm activity," from which the issuing judge could infer that evidence pertaining to the handguns would be found in Williams's residence.

A magistrate may infer a nexus between a suspect and his residence, depending upon "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985); *see United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir. 2001) (noting that a court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," and holding that it was reasonable to infer that a suspected drug dealer would keep evidence of his crime at his residence (citation omitted)); *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) (holding that it was a reasonable inference that a bank robber would keep stolen currency in his residence despite the passage of more than two months between the time of the robbery and the search).

In a recent line of cases, we have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking. *See, e.g., United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); s*ee also United States v. Gunter*, 2008 WL 482031, *4 (6th Cir. 2008) (unpublished decision) (noting that our precedents establish that there is a nexus between a drug dealer's criminal activity and the dealer's residence when there is reliable evidence connecting the criminal activity to the residence); *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated in part on other grounds*, 546 U.S. 803 (2005) (holding that in cases involving drug traffickers engaged in "continuing operations," the "lack of a direct known link between the criminal activity and the residence[] becomes minimal"); *Caicedo*, 85 F.3d at 1192-93(holding that there was probable cause based on an affidavit that stated, in the affiant's experience, many drug traffickers use their residences to conduct their drug trafficking activities). *But cf. Schultz*, 14 F.3d at 1097-98(holding that a search warrant should not have issued where the officer seeking the warrant had nothing more than a guess that contraband or evidence of a crime would be found in a drug trafficker's safe deposit box).

Although Williams acknowledges our precedents, he argues that an issuing judge may infer a nexus between a suspect and his residence only when the suspect is a suspected drug trafficker, and in doing so relies on *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006). In *McPhearson*, police officers sought to arrest the defendant at his residence on simple assault charges. *Id.* at 520. When the defendant appeared at the door, the officers arrested him and searched his person, finding crack cocaine in his pocket. *Id.* After the arrest, the officers sought and

obtained a search warrant for the defendant's residence, relying only on the officers' discovery of drugs on the defendant's person. *Id.* The officers found firearms and additional crack cocaine in the defendant's residence after executing the search warrant. *Id.* at 520-21.

In affirming the district court's suppression of the crack cocaine, we rejected the government's argument that the defendant's arrest outside his residence with drugs on his person established a fair probability that his residence would yield further evidence of criminal activity. *Id.* at 524. We noted that in cases that established a nexus between the suspected criminal activity and the suspect's residence "the [search warrants'] affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes–namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *Id.* In *McPhearson* the government could not produce evidence that tied the defendant's criminal activity to his residence.

Here, however, Williams incorrectly assumes that the facts do not provide the additional evidence of his criminal activity that this court required in *McPhearson*, and Williams attempts to stretch our holding too far by arguing that unless the suspect is a drug dealer, an issuing judge may not issue a search warrant that lacks evidence linking a suspect's criminal activity to his residence. In the present case, the warrant affidavit set forth sufficient facts to permit the issuing judge to infer a link between the handguns sought and Williams's residence. The warrant application named two informants, Cosme and Jackson, both of whom informed Officer Stewart that Williams possessed two handguns recently used to commit the robbery of marijuana from a drug trafficker. Several sources substantiated this information, including Detroit Police Department records that indicated police recently arrested Williams for carrying a concealed firearm. Given the evidence that Williams possessed multiple guns, and had recently used them to further his criminal activity, the issuing judge could have reasonably inferred that Williams kept at least one handgun at his residence.

In making this holding, we join other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the "instrumentalities and fruits" of his crime in his residence. *See United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (opining that firearms used in a robbery are "likely to be kept in a suspect's residence"); *United States v. Anderson*, 851 F.2d 757, 729 (4th Cir. 1988), *cert. denied*, 488 U.S. 1031 (1989) (holding, in a case involving the illegal sale of a gun silencer, that "[i]t was reasonable for the magistrate to believe that the defendant's gun and silencer would be found in his residence. Therefore, even though the affidavit contains no facts that the weapons were located in the defendant's trailer, we reject this argument that the warrant was defective."); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975) (noting in a bank robbery case that there is "little reason to believe that any of the bank's money . . . would still be in the home," but "the same could not be said of the revolver"); *Bastida v. Henderson*, 487 F.2d 860, 861-62 (5th Cir. 1973) (affirming a magistrate's finding of probable cause to search a suspect's residence for a gun used in an armed robbery).

Much like a bank robber would keep the proceeds and instrumentalities of his robbery in his home, so too could Williams be expected to keep the instrumentalities of his criminal activity at his residence. Further, the evidence given to Officer Stewart by the informants seemed to indicate only two locations where Williams would possibly store the handguns: his car or his residence. As Williams was recently arrested in his car, without both handguns, it was reasonable to conclude that Williams kept at least one of the handguns sought at his residence.[1]

---

[1]Our dissenting colleague sounds an alarmist tone, charging us with having "expanded a rule" that "will significantly damage, if not destroy, the protections of the Fourth Amendment." Far from having established a "rule," however, we have tied our holding closely to the particular facts of this case and have merely undertaken, as we are

**II. The district court correctly found that the warrant application included testimony and evidence sufficient to support the issuing judge's finding of probable cause.**

In addition to his argument that the warrant lacked the necessary nexus between Williams's suspected criminal activity and his residence, Williams also argues that Officer Stewart's affidavit testimony was insufficient to establish probable cause. Like his nexus argument, this argument also fails.

Williams argues that the affidavit cited "unreliable, conflicting" testimony that he possessed the handguns, but the district court correctly found that Officer Stewart's affidavit tied Williams to the handguns and their illegal use through interlocking and corroborating information from multiple sources: statements from Cosme, Reinoso, and Jackson; Officer Stewart's own surveillance; and Detroit Police Department records. As if to underscore the failure of his argument, Williams points to only one alleged inconsistency in Officer Stewart's affidavit. Williams contrasts Cosme's statement that Williams removed the handguns from Cosme's residence "just prior" to the police raids in mid-July with Jackson's assertion that Williams used the .45 caliber handgun to rob a drug trafficker "a month earlier," in mid-June. Williams contends that he could not have used the .45 caliber handgun in a robbery a month before he took it from Cosme's house, and asserts that, consequently, the issuing judge erred in finding probable cause to issue the warrant.

Williams incorrectly assumes that these statements contradict each other. Williams's removal of the handguns from Cosme's residence in mid-July does not speak to Williams's access to the gun prior to that time. Indeed, Cosme told Officer Stewart that Williams used the .45 caliber handgun to rob the drug traffickers a month earlier, thus indicating that Williams had access to the handguns before he removed them from Cosme's residence. Moreover, the affidavit shows Williams's access to the handguns during that time period because it established that the police arrested Williams on June 26, 2004, for carrying a concealed weapon. In light of these facts, there is no contradiction in Officer Stewart's affidavit.

Williams further argues that the warrant application did not establish that Williams resided at the upper level of the residence at 4900 Tarnow Street. Williams alleges that only Jackson identified 4900 Tarnow Street as his residence, and therefore contends that the warrant violated United States Supreme Court precedent, which holds that an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Jones v. United States*, 362 U.S. 257, 269-270 (1960) (citing *Draper v. United States*, 358 U.S. 307 (1959)), *overruled on other grounds by United States v. Salvicci*, 448 U.S. 83 (1980).

This argument also lacks merit. First, unlike in *Jones*, the warrant here named the informants, and named informants, unlike confidential informants, require little corroboration. *See, e.g., United States v. Miller*, 314 F.3d 265, 270-71 (6th Cir. 2002) (finding a first-time informant reliable because the affidavit named the informant, the informant provided detailed information, and the informant was subject to prosecution if his information was fabricated). Second, Officer Stewart

---

obliged to do, a practical, common-sense evaluation of the circumstances set forth in the search warrant affidavit with great deference to the issuing judge's finding of probable cause.

Moreover, even if reasonable jurists may differ on whether the affidavit established a sufficient nexus between the evidence sought and the place to be searched, it is abundantly clear that the officers who executed the search warrant were entitled to reasonably and in good faith rely on it. The affidavit is not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The district court properly concluded, therefore, as an alternative basis for its ruling, that denial of the suppression motion was justified pursuant to the good faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984). *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (finding *Leon* exception applicable where affidavit facts, albeit insufficient to establish probable cause, "were not so vague as to be conclusory or meaningless").

corroborated the information Jackson provided through multiple sources, including Cosme and Reinoso, who correctly identified Williams's block, and Officer Stewart's own observations outside Williams's residence substantiated Jackson's statements.

Finally, before the district court Williams contended that the search warrant did not establish probable cause because it failed to allege that Williams was prohibited from possessing firearms. The district court found that Williams "provide[d] no authority, and the court knows of none, for the implied assertion that a search warrant application must contain probable cause for the specific crime under which a defendant will eventually be charged." Williams did not, however, raise this argument on appeal; instead, he only passingly alluded to it in his reply brief. To the extent that Williams failed to develop or support his argument with any legal authority, *see United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson*, 125 F.3d at 995-96), and because "[a]n appellant waives an issue when he fails to present it in his initial briefs before this court" *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 318 (6th Cir. 2005) (quoting *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) (internal quotation marks omitted), we decline to address Williams's argument.

## CONCLUSION

Here, Officer Stewart's affidavit did not use mere "suspicions, beliefs or conclusions" to link Williams to either 4900 Tarnow Street or the two handguns. *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Rather, it provided corroborated information from three named informants; thus, it established a nexus that was neither "conclusory or meaningless." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc). Finally, our decision today aligns us with many of our sister circuits, which hold that an issuing judge may infer that a suspect keeps the instrumentalities or fruits of his criminal activity at his residence, even when that criminal activity is not drug trafficking. Accordingly, the district court correctly denied Williams's motion to suppress, as the search warrant was supported by probable cause.

AFFIRMED.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  I respectfully dissent from the majority's conclusion that the affidavit underlying the search warrant established a sufficient nexus between the apartment searched and the guns that the police sought.  I would therefore hold that the search warrant was defective, and the district court erred in denying David Williams's ("Williams") motion to suppress.

## I. BACKGROUND

Williams entered a conditional guilty plea on charges that he had violated 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substance) and 18 U.S.C. § 924(c)(1)(B)(i) (Possession of a Short Barreled Shotgun in Furtherance of a Drug Trafficking Crime).  Upon sentencing and judgment, he now appeals the district court's denial of his motion to suppress the evidence on which these convictions are based.

The following facts are drawn from the district court opinion and from the affidavit underlying the search warrant.  *United States v. Williams*, 2005 WL 2127597 (E.D. Mich. Aug. 31, 2005).  On July 12, 2004 and July 15, 2004, Detroit Police officers executed search warrants on two residences in Detroit, one located at 5950 Hedwig[1] and one at 5409 Springwells.  A resident of both addresses, Jose Cosme ("Cosme"), told officers that a man called "D-Bird" had taken two guns, one .25-caliber handgun and one .45-caliber handgun, from these locations before they were searched.  He also reported that D-Bird had used one of these guns to rob five pounds of marijuana from a drug trafficker.  Cosme informed the officers that D-Bird drove a silver Monte Carlo and lived between Michigan Avenue and the I-94 service drive on Tarnow.  Cosme's mother, Stella Reinoso ("Reinoso"), confirmed these statements.

A few days later, on July 16, 2004, police arrested Kamico Jackson ("Jackson").  Jackson told police that D-Bird's real name was David Williams, and identified an upper-level apartment on Tarnow as Williams's residence.  The address of this apartment was 4900 Tarnow.  Jackson confirmed Cosme's report that Williams drove a silver Monte Carlo and had robbed a drug trafficker at gun point.  Jackson reported that he had seen Williams with both a .25- and a .45-caliber handgun.  Finally, Jackson told officers that Williams had recently been arrested for possession of a stolen motor vehicle and that there was a gun in the car during this arrest.

The next day, Detroit Police Officer Darryl Stewart ("Stewart") observed the apartment at 4900 Tarnow.  He saw a man fitting Williams's description standing next to a silver Monte Carlo outside the building.  After seeing the same car there on July 22, 2004, Stewart used the description of Williams to search the police database.  He discovered that Williams had been arrested on June 26, 2004 for carrying a concealed weapon.  The search also revealed two different addresses for Williams, neither of which corresponded to the apartment on Tarnow.  When he was arrested for carrying a concealed weapon, Williams gave his address as 7176 Parkwood, and the license plates on the silver Monte Carlo were registered at 7163 Parkwood.

On July 23, Stewart applied for and received a warrant to search the upper level of 4900 Tarnow for weapons and related materials.  Stewart's affidavit in support of this warrant alleged the following facts:  1) weapons had been seized during searches at 5950 Hedwig and 5409 Springwells;

---

[1] While the affidavit identifies this address as 5950 *St.* Hedwig, the district court and the majority both call it 5950 Hedwig.  Following their lead, this opinion will designate this address as 5950 Hedwig.

2) Cosme, a resident of both locations, said that D-Bird had a .25- and a .45-caliber handgun that had been moved from these addresses shortly before the searches were conducted; 3) Reinoso confirmed Cosme's statements, and both Cosme and Reinoso told police that D-Bird drove a silver Monte Carlo and lived on Tarnow between Michigan Ave and the I-94 service drive; 4) when Jackson, a known associate of Cosme and D-Bird, was arrested, he informed police that D-Bird's real name was David Williams, and Jackson identified an upper-level apartment on Tarnow (4900 Tarnow) as Williams's residence; 5) Jackson also told police that Williams had been arrested for possession of a stolen motor vehicle and that he had a gun in the car at the time; 6) Jackson stated that he had seen Williams with a .25- and a .45-caliber handgun; 7) both Cosme and Jackson informed police that D-Bird had used a .45-caliber gun to rob a drug dealer of five pounds of marijuana; 8) through surveillance, Stewart observed a man fitting Williams's description standing near a silver Monte Carlo which was seen in front of 4900 Tarnow on two separate days; 9) Stewart searched the police database and found a man named David Williams who looked like the man he saw standing by the Monte Carlo; 10) this Williams had been arrested for carrying a concealed weapon on July 26, 2004; 11) at the time of this arrest, Williams gave his address as 7176 Parkwood and the Monte Carlo's license plates were registered at 7163 Parkwood.

When they executed the warrant at 4900 Tarnow, the police found cocaine base and a short-barreled shotgun, but they did not find either of the two handguns mentioned in the affidavit.

After the search, Williams was indicted and entered a conditional guilty plea to charges of possession of a controlled substance with intent to distribute and possession of a short-barreled shotgun in furtherance of a drug-trafficking crime, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 942(c)(1)(B)(i), respectively.

## II. ANALYSIS

When evaluating the denial of a motion to suppress, we review the district court's factual findings for clear error, and we review its determination of probable cause de novo. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

Under the Fourth Amendment, a warrant can only issue when there is probable cause, or "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002) (internal quotation marks omitted), *cert. denied*, 539 U.S. 908 (2003). The issuing judge determines whether there is probable cause by applying a common-sense "totality of the circumstances approach." *Id.* We give an issuing judge's finding of probable cause great deference and reverse only when the judge could have had no "'substantial basis'" for finding probable cause. *Id.* at 268-69 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

In order to establish probable cause, an affidavit must demonstrate a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (internal quotation marks omitted), *cert. denied*, 526 U.S. 1077 (1999). The majority rejects Williams's argument that the affidavit underlying the search warrant for the apartment at 4900 Tarnow failed to establish probable cause. However, the common-sense review called for by both precedent and the majority reveals that, because the underlying affidavit failed to demonstrate any nexus between 4900 Tarnow and the two handguns, the search warrant lacked probable cause.

The majority's holding undercuts this court's precedents and the Fourth Amendment by allowing a warrant to issue so long as the affidavit alleges that the individual under investigation has done something criminal and lives in a certain location. The majority finds a nexus based solely on the fact that two informants said Williams had used a gun in a robbery and that the same two informants identified Williams's home as 4900 Tarnow (although neither knew this address and one

had only a general knowledge of where Williams lived). The majority cites a list of decades-old cases from other circuits in support of its broad expansion of the principle that in some circumstances, "an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence." Maj. Op. p. 5. Such a connection may sometimes be inferred, but this affidavit only connected Williams with a crime and with a location and provided no additional factors permitting a court to infer a nexus between guns and that location.

**A.  A common-sense review of this affidavit reveals that it contains no evidence of a nexus between the place to be searched and the guns to be sought.**

The majority fails to apply the agreed-upon totality of the circumstances test to determine whether the affidavit, standing alone, establishes a connection between the place to be searched, 4900 Tarnow, and the guns sought. Instead, the majority isolates the facts from the affidavit that support its conclusion and then finds a nexus based on what hypothetical defendants might or might not do with evidence of their crimes in a variety of circumstances. The majority's selective view neglects to address two major flaws in the affidavit.

First, the affidavit contains clear indications that, whatever the majority's hypothetical criminal suspects do with their weapons, Williams did not keep any guns he possessed in his residence. The affidavit establishes that Williams kept two guns, one of which he allegedly used to rob a drug dealer, at 5950 Hedwig and 5409 Springwells. The affidavit does not allege that Williams ever lived at either of these addresses, and Cosme, a resident of both, did not even know Williams's real name. The affidavit also asserts that Jackson saw Williams with guns at some location not alleged to be Williams's home, and that Williams once carried a gun in his car. Not only does this information fail to establish a link between 4900 Tarnow and the handguns, but also it highlights the fact that Williams was known to keep his guns in locations other than his own home. Thus, while the majority rests on the government's supposedly "logical, and indeed legally correct, assertion" that it is reasonable to infer that some criminals keep evidence in their homes, Maj. Op. p. 4, the affidavit we must analyze suggests that such an inference is obviously *un*reasonable in this case. The inference that Williams would take guns he kept at the home of an acquaintance and bring them to his own home only *after* committing a crime with them is neither rational nor logical. In fact, the opposite inference is more reasonable; that Williams intentionally kept his guns outside his residence, even leaving them with people he did not know well.

In addition to failing to establish that it was logical to conclude that Williams, not a hypothetical defendant, kept his guns at his residence, the affidavit fails to establish that 4900 Tarnow was Williams's residence. The majority neglects to mention the fact that while two informants tied Williams to the Tarnow apartment, the police department's own files linked Williams to two different addresses. Williams gave the police one of these other addresses when he was arrested about a month before the search. Stewart saw Williams's car outside the Tarnow apartment twice, but he did not observe Williams entering or exiting the building. The affidavit offers no reason to infer that 4900 Tarnow was Williams's residence, or that if it was his residence it was the place he would keep his guns. The affidavit does not even contain the officer's assertion that in his experience, Williams, or someone accused of similar crimes, would keep evidence of the crimes in his home. The presence of the additional addresses makes it impossible reasonably to infer that Williams would keep evidence of his alleged crimes at any one of the three locations. An officer's guess that the evidence would be at one of the three addresses cannot create the necessary nexus. *See United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) (holding that a warrant should not have issued where a police officer "did not have anything more than a guess that contraband or evidence of a crime would be found" in the defendant's safe deposit boxes).

**B.  The majority's opinion establishes a precedent that renders the nexus element of the probable-cause requirement of the Fourth Amendment a mere formality.**

Apart from ignoring the import of these glaring flaws in the affidavit, the majority expands this court's precedents in a disturbing way.  Our previous caselaw has drawn a line between cases in which investigation revealed complicated, ongoing criminal activity such that a judge could infer that the defendant kept evidence of that activity in his home, and cases in which information about a single crime or an individual's status did not permit an inference that there would be evidence of further criminal activity in that individual's home.

Cases in which this court has allowed a nexus to be inferred between a suspect and his residence have all included concrete, specific information tying the location with the crime, beyond just the fact that the defendant may have committed the crime and may live in that location.  Each case has included some additional "plus" factor allowing the nexus to be inferred.  *United States v. Newton*, 389 F.3d 631, 639-42 (6th Cir. 2004) (Moore, J., concurring in part and dissenting in part), *vacated in part on other grounds*, 546 U.S. 803 (2005).  In *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002), *cert. denied*, 538 U.S. 971 (2003), this court upheld a search warrant obtained after police observed two men receive a controlled delivery of cocaine, found out where they lived, and included information regarding the men's ongoing participation in drug trafficking.  All of the cases cited in support of this holding involved drug trafficking and the assertion that drug dealers often keep evidence of drug dealing in their homes.  *Id.*  In the unpublished case *United States v. Gunter*, 266 F. App'x 415, 418-19 (6th Cir. 2008) (unpublished decision), police observed the defendant, an alleged drug dealer, stop briefly at his house before selling drugs to a confidential informant.  This court upheld the warrant based on a state agent's experience that drug traffickers often keep evidence of their crimes in their homes, but the panel warned that "[t]he mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home." *Id.* at 418.  In *Newton*, 389 F.3d 631, the defendant was found with a very large quantity of marijuana, tried to hide his address from the police, and was alleged to be engaged in drug dealing.  In *United States v. Caicedo*, 85 F.3d 1184 (6th Cir. 1996), the defendant was arrested when cocaine was found in his companion's backpack, he lied about his address, and the officer alleged that drug traffickers often keep evidence at their homes.

I have written separately before to express my discomfort with the caselaw described above, as it "comes dangerously close to creating a special rule for drug-related search warrants, inappropriate under *Richards v. Wisconsin*, 520 U.S. 385, 392-95 (1997) . . . , and to eliding the distinction between probable cause to believe an individual guilty of a crime and probable cause to search property owned by that individual, in contravention of *Zurcher v. Stanford Daily*, 436 U.S. 547, 556-59 & n.6 (1978) . . . and *Chimel v. California*, 395 U.S. 752, 762-63 (1969)." *Newton*, 389 F.3d at 639-40 (Moore, J., concurring in part and dissenting in part).  The majority opinion, however, goes far beyond this worrisome precedent and, in doing so, obliterates the nexus requirement of the Fourth Amendment.

When the cases discussed above are contrasted with cases in which this court has declined to find a sufficient nexus, it becomes clear that today's holding has erased even the feeble requirement that there be a "plus" factor tying the item sought to the location to be searched before a proper warrant will issue.  In *United States v. McPhearson*, 469 F.3d 518, 524-25 (6th Cir. 2006), this court held that the fact that a search of a man arrested on assault charges uncovered drugs on his person did not provide the probable cause necessary for a warrant to search his home.  The *McPhearson* panel noted the requirement of a "plus" factor before a nexus can be inferred, holding that in cases where an inference was found to be proper, "the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *Id.* at 524-25.  In *United*

*States v. Savoca*, 761 F.2d 292, 294-95 (6th Cir. 1985), this court held that there was no probable cause to search a motel room for evidence of a robbery when the robbery had taken place thousands of miles away and the affidavit did not state how recent the robbery was. This holding illustrates the fact that a common-sense reading of an affidavit may reveal "minus" factors that weaken an inferred nexus. As discussed above, the affidavit underlying the search of Williams's home contained these "minus" factors without the "plus" factors demanded by *McPhearson*.

The majority holds that although our prior caselaw explicitly required allegations of ongoing drug trafficking activity before a nexus could be inferred, such allegations are not necessary. *Compare* Maj. Op. p. 5 *with McPhearson*, 469 F.3d at 524-25. The majority expands a rule that was already approaching constitutional limits to an absurd and unconstitutional degree. Under the majority's holding, as long as an affidavit alleges that a crime was committed by an individual and that the individual lives in a certain residence, a nexus can be inferred and a search warrant can issue for that residence. *See* Maj. Op. p. 5 (listing supposed "plus" factors allowing a judge to infer a nexus). This rule completely dispenses with the nexus requirement and merges the standards for an arrest warrant with the standards for a search warrant. Such a result is contrary to well-established Supreme Court caselaw. *See Zurcher*, 436 U.S. at 556 ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

The majority relies on decades-old cases from our sister circuits to leap from allowing a nexus to be inferred only when an affidavit presents strong evidence of an individual's involvement in an ongoing drug conspiracy to eviscerating the nexus requirement entirely. The affidavit presented here includes no allegations of ongoing criminal activity of any kind; it does not even include an officer's assertion that he has reason to believe the guns would be found at *this* location. Instead, it links Williams to three separate addresses and to one alleged crime. It draws no link between the crime or the guns and any of these three addresses. The affidavit also shows that Williams tended to store his guns away from his home, so even if one of these addresses could be chosen for a search, the affidavit offers no nexus, no reason to believe that these guns would be at that residence.

I would hold that this search warrant was defective because it failed to establish a nexus between the items to be seized and the location to be searched. I would therefore reverse Williams's conviction. The majority's holding will significantly damage, if not destroy, the protections of the Fourth Amendment as it pertains to search and seizure, and I must, therefore, respectfully dissent.[2]

---

[2] In a footnote, the majority quotes a portion of this sentence and charges me with striking "an alarmist tone." In the same footnote, the majority asserts that it has not established a new rule but has simply performed a common-sense evaluation of the facts in this particular case. The majority opinion does review some of the facts, but in order to uphold the search warrant, the majority must expand the once-limited rule allowing a fact finder to infer a nexus between the place to be searched and the thing to be sought.

The majority also briefly asserts in the same footnote that even if the affidavit did not establish probable cause, suppression is an inappropriate remedy because the police officers reasonably and in good faith relied on the warrant. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). However, as the Supreme Court noted in *Leon*, the exception to the suppression rule applies only when "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable." *Id.* It is settled law that before a warrant will issue, an affidavit must establish a nexus between the place to be searched and the thing to be sought. *Van Shutters*, 163 F.3d at 336-37. The affidavit we consider today establishes no nexus between the guns and 4900 Tarnow, and given this glaring omission, the officers had "no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23. I therefore dissent from the majority's "alternative basis for its ruling." Maj. Op. p. 6 n.1.