NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0794n.06

No. 09-5703

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 28, 2010**

LEONARD GREEN, Clerk

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| | : | | |
| Plaintiff-Appellant, | : | | |
| | : | ON APPEAL FROM THE | |
| v. | : | UNITED STATES DISTRICT COURT | |
| | : | FOR THE MIDDLE DISTRICT OF | |
| CHARLES E. RICE | : | TENNESSEE | |
| | : | | |
| Defendant-Appellee. | : | OPINION | |

**BEFORE: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.**[*]

**PER CURIAM:**

Plaintiff/Appellant, the United States of America, appeals the district court's suppression of the fruits of the search of the residence of Defendant/Appellee, Charles Rice, pursuant to a search warrant.

For the reasons stated below, we **REVERSE**.

**I.**

On September 17, 2008, a law enforcement officer with the Thirteenth Judicial District Drug Task Force in the State of Tennessee submitted an affidavit in support of a request for a search warrant to a state court judge. The search warrant request was for the residence of the

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Defendant/Appellee, Charles Rice.  The relevant portion of the law enforcement officer's affidavit

stated the following:

> On September 16, 2008 Agents with the 13th Judicial District Drug Task [Force] (JDTF) were contacted by a confidential source regarding activity by Charles Rice. Agents from the 13th JDTF met with the confidential source at Attorney Shawn Fry's office, with Attorney Fry present during the meeting.  The confidential source advised agents that Charles Rice was on his way home to 480 Rice Barnes Lane from California transporting several pounds of methamphetamine.  The confidential source advised agents that he would be driving a white Toyota 4 door Matrix belonging to his girlfriend Julie Stinson.  Agent Randolph verified through a citizen informant and other law enforcement personnel that Julie Stinson is known to be a girlfriend to Charles Rice.  Agent Randolph learned through this confidential source that his information was coming to him from an unidentified citizen informant who was too afraid to talk with law enforcement about Charles Rice.  Agent Randolph did convince the citizen informant to talk with him long enough to say that when Mr. Rice arrives home from his trips to California he hides the methamphetamine[] in flower pots around the residence.  The confidential source advised Agents that Mr. Rice stored stolen motorcycles and motorcycle parts in an outbuilding on the property at 480 Rice Barnes Lane.  Agents were also informed that it was a common practice for Mr. Rice to bury money and guns on his property.  The confidential source advised agents that Mr. Rice would have a bright yellow older model Chevy Impala on the property for his personal use.  The confidential source provided agents with a hand drawn map of the property, the home and the outbuildings on the property at 480 Rice Barnes Lane.
>
> When agents left Attorney Fry's office they ran a criminal history on Charles E. Rice. The criminal history revealed to the agents that Mr. Rice has a long history of arrest, leading as far back as 1970, in California.  The history also shows that Mr. Rice has prior arrest[s] for possession of schedule II and schedule VI controlled substances. The arrest records also show that Mr. Rice has been charged with carrying weapons while being in possession of controlled substances and has been charged on more than one occasion with being in possession of an explosive device.
>
> On September 17, 2008 agents from the 13th JDTF drove to 480 Rice Barnes Lane. Agents hoped to speak with neighbors, but found no one at home.  Agents had been advised from other law enforcement that there had been numerous complaints made to the White County Sheriff's Department concerning Mr. Rice, from his neighbors. While agents were close to Mr. Rice's residence they observed a white Toyota 4 door Matrix and a bright yellow older model Chevy Impala.  Agents also found that the

hand drawn map provided to them from the confidential informant was accurate. When agents arrived back at the office a vehicle registration query was performed on Mr. Rice and Julie Stinson. Agents found that Julie Stinson has a 2004 white Toyota Matrix registered to her and that Charles Rice has a 1966 Chevy Impala registered to him.

On September 17, 2008 Agents met with a confidential informant provided to them from other law enforcement personnel. This confidential informant has provided credible and reliable information to law enforcement in the past. This confidential informant has provided information to law enforcement that has led to the arrest and conviction of drug defendants on at least eight (8) separate occasions. This confidential informant advised agents that within the last year to year and a half he provided iodine to Charles Rice to cook methamphetamine. Confidential informant told agents that in exchange for the iodine Mr. Rice would give him money and methamphetamine. The confidential informant advised agents that this exchange took place at least ten (10) times. This confidential informant also advised agents that when Mr. Rice took the trip to California he would have the white Toyota Matrix, owned by Julie Stinson, serviced in Cookeville and he would drive it to California.

(R.18-2). The state court judge signed the search warrant and it was executed the following day on September 18, 2008.

The search of Rice's home yielded quantities of methamphetamine and marijuana as well as assorted drug paraphernalia. (R.18-1). The search also yielded a loaded pistol in Rice's bedroom and several other firearms located throughout Rice's property. (*Id.*).

As a result, Rice was indicted on one count of possession of methamphetamine with intent to distribute. (R.1). Rice moved to suppress the evidence seized from the search of his residence. (R.18). The district court granted Rice's motion to suppress, holding that the search warrant lacked probable cause and that the good faith exception to the exclusionary rule did not apply. (R.23). On June 5, 2009, the United States filed a timely notice of appeal. (R.32).

**II.**

This court reviews the district court's decision on a motion to suppress using a mixed standard of review. Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009). Where the district court is itself a reviewing court, this court owes the district court's conclusions no particular deference. *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000); *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996); *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993).

**A.**

On appeal, the government advances two arguments. First, the government argues that the circumstances contained in the affidavit for the search warrant in question did in fact constitute probable cause. Second, it argues that the district court incorrectly rejected the good faith exception under *United States v. Leon,* 468 U.S. 897 (1984). Because we find merit in appellant's second argument, we will not address the question of whether the search warrant lacked probable cause. *See United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir. 1998); *United States v. Savoca*, 761 F.2d 292, 294 (6th Cir. 1985).

**B.**

In *United States v. Leon*, the Supreme Court officially recognized the good faith exception to the exclusionary rule, which requires suppression of all evidence obtained in violation of the Fourth Amendment. 468 U.S. 897. In doing so, the Supreme Court carefully weighed the benefits and detriments of recognizing a good faith exception to the exclusionary rule. "[O]ur evaluation of

the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." *Id.* at 913.

However, the Supreme Court also recognized that the good faith exception was not without limits. Based on the holding of *Leon*, we have recognized four specific instances in which the good faith exception would not apply:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Higgins,* 557 F.3d 381, 391 (6th Cir. 2009) (citing *United States v. Rice,* 478 F.3d 704, 711 (6th Cir. 2007)). The district court herein relied on the fourth exception to the good faith rule as the basis to grant Rice's motion to suppress.

In doing so, the district court ruled that "no reasonably trained officer could have believed the search to be legal, despite the fact that a judge had issued a warrant." (R.23 at 9). The district court rejected the good faith exception stating that there was a "lack of any temporal or locational nexus between the information provided by the confidential informant and the subsequent search." (*Id.*). This is incorrect.

5

The affidavit that supported the search warrant specifically stated that a citizen informant told police that "when Mr. Rice arrives home from his trips to California he hides the methamphetamines [sic] in flower pots around the residence." (R.18-2 at 2).

The affidavit also stated that a separate confidential source advised police that "it was a common practice for Mr. Rice to bury money and guns on his property." (*Id.*). The affidavit also included information from a third confidential informant, who told police that, at least ten times in an eighteen-month period preceding the search warrant, he had provided Charles Rice with iodine in exchange for money and methamphetamine.[1] (*Id.*).

Multiple decisions of this court have held that "a nexus between the place to be searched and the item to be seized may sometimes be inferred." *Higgins,* 557 F.3d at 391 (6th Cir. 2009) (citing *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)).

> In a recent line of cases, we have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking. *See, e.g.*, *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *see also United States v. Gunter*, 266 Fed. App'x 415, 419 (6th Cir. 2008) (unpublished decision) (noting that our precedents establish that there is a nexus between a drug dealer's criminal activity and the dealer's residence when there is reliable evidence connecting the criminal activity to the residence) . . . .

*United States v. Williams,* 544 F.3d 683, 687 (6th Cir. 2008). *Accord United States v. Martinez*, No.95-3962, 1997 WL 26461, at *2 (6th Cir. Jan.22, 1997)*; United States v. Davidson*, 936 F.2d 856, 860 (6th Cir. 1991); *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976).

---

[1] Iodine is a precursor material used in manufacturing methamphetamine. *See* U.S. Drug Enforcement Administration clandestine laboratory indicators list at http://www.justice.gov/dea/concern/clandestine_indicators.html.

Such an inference is reasonable because "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). Here, the search warrant affidavit contained information indicating that Rice used his residence as a place to hide the drugs he was suspected of possessing and/or manufacturing. This information renders the law enforcement officer's reliance upon the search warrant objectively reasonable. "[T]his court has noted that reasonably well trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause." *United States v. Sneed*, 385 Fed. App'x 551, 559-60 (6th Cir. 2010).

On multiple occasions, this court has held that the *Leon* good faith exception was applicable where the search warrant was later determined to be invalid. *See United States v. Washington,* 380 F.3d 236, 242 (6th Cir. 2004)*; United States v. Carpenter*, 360 F.3d 591, 595-97 (6th Cir. 2004) (en banc)*; United States v. Van Shutters*, 163 F.3d at 336-38*; United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994)*; United States v. Savoca*, 761 F.2d 292 (6th Cir. 1985). Therefore, without deciding the question, even if the search warrant in the instant case was invalid, the *Leon* good faith exception would still apply.

The fact that an affidavit fails to establish probable cause is not determinative of whether that affidavit could support a reasonable belief in the validity of the search warrant for purposes of the exclusionary rule. *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006). The reason is that the standard for applying the good faith exception of *Leon* is lower than that which is required to find probable cause.

A police officer's objectively reasonable reliance on a signed search warrant requires "a less demanding showing" than the "substantial basis" threshold required for probable cause. *Higgins,* 557 F.3d at 391 (6th Cir. 2009) (quoting *Carpenter*, 360 F.3d at 595 (6th Cir. 2004) (en banc)). "If the inquiries were identical, the probable cause determination would subsume the good faith exception." *McPhearson*, 469 F.3d at 526 (citing *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005)).

Here, the affidavit was not so lacking in information that a reasonable law enforcement officer's reliance upon it was per se unreasonable. The affidavit contained information from several different sources indicating a likelihood of Rice's involvement in drug trafficking. At least one source connected the alleged unlawful activity to the residence that was eventually searched. Thus, while the affidavit arguably may have been deficient, the good faith exception under *Leon* saves the search, and the fruits thereof, from application of the exclusionary rule.

**REVERSED.**