[Cite as *State v. Young*, 2019-Ohio-4639.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-845 |
| | | (C.P.C. No. 16CR-2606) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kali E. Young, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 12, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Valerie Swanson*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Yeura Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Kali E. Young, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to no contest plea, of one count of possession of cocaine and one count of possession of heroin. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed May 13, 2016, plaintiff-appellee, State of Ohio, charged Young with one count of possession of cocaine in violation of R.C. 2925.11, a second-degree felony; and one count of possession of heroin in violation of R.C. 2925.11, a fifth-degree felony. Young initially entered a plea of not guilty.

{¶ 3} On August 21, 2018, Young filed two motions to suppress. Specifically, Young argued the officers lacked probable cause to obtain the search warrant.

{¶ 4}  At a suppression hearing conducted on September 17, 2018, the state introduced a copy of the search warrant.  The affidavit in support of the search warrant, signed by Detective Jon Earl of the Whitehall Police Department, states in its entirety:

> [The informant] contacted Det. Earl on 2/19/16 and stated that he/she knows of a drug dealer named "Kali" who is currently selling cocaine from 4218/4238/4227 Rickenbacker Ave.  The informant stated that Young does not live at the apartment complex.  The informant stated that Young comes to the complex and sells cocaine to numerous people.  The informant knows Young to sell out of what he/she believes is Apt. 40 at 4218 Rickenbacker Ave.  This informant is considered reliable and has provided information that has resulted [in] numerous arrests and the recovery of cocaine, heroin, marijuana and guns in the past.  The informant described "Kali" as a male/black around 5'07" with a large/heavy build, short hair in his late 30's to early 40's in age.  The informant provided a telephone number of 614-948-9350 for "Kali".  The informant stated that he/she has recently seen "Kali" in a white Toyota Camry license number GMQ4910.
>
> Upon investigating the information provided by the informant, Det. Earl was able to locate Kali Young.  Young matched the physical description provided by the informant.  A BMV photograph of Young was shown to the informant who stated "That's Kali".
>
> Young was shown to have a possible address of 1008 Caldwell Pl Columbus, OH 43203.  Detectives began to conduct surveillance on the location.  Detectives have observed the White 2009 Toyota Camry parked in front of the residence.  Detectives have also observed Young coming and going from the residence using keys each time to enter/exit the residence at various hours of the days and nights.  Detectives have also observed Young driving that vehicle.  Young has been observed making quick stops and meeting other people at various locations in the vehicle.  From training and experience these stops appear to be narcotics deals where the meeting last less than five minutes and hand to hand exchanges take place.
>
> Within the past 72 hours, Det. Earl #50 met with [the informant].  The informant was searched and no contraband was located.  The informant was provided with recorded city funds.  The informant contacted a male at 614-948-9350 who he/she identified as Kali.  A controlled narcotics buy was setup for a predetermined amount of crack cocaine at a

predetermined meeting location. Prior to the call Det. Grinstead #71 was conducting surveillance at 1008 Caldwell Pl in Columbus, OH. The white 2009 Toyota Camry was parked in front of the residence at the time. A short time after the call, Young was observed leaving 1008 Caldwell Pl and getting into the listed Toyota Camry. Young then drove to the predetermined meeting location while being kept under mobile surveillance. Young was observed meeting with the informant for less than five minutes. Young left the area and was again kept under visual surveillance. He was then followed back to 1008 Caldwell Pl where he was observed using keys to enter the apartment. The informant was kept under constant visual surveillance after the controlled narcotics buy. He/she met with Det. Earl and handed him the predetermined amount of crack cocaine. The informant stated that he/she just purchased it from the person that he/she identified as Kali Young. The informant was again searched and no contraband was located. The recovered crack cocaine was field tested and showed a positive reaction for cocaine.

Kali Young CCH has shown arrest for Carrying a Concealed Weapon and Resisting Arrest. He also has numerous arrests for Felony possession of Drugs and a conviction for Third Degree Felony Possession of drugs. Based on the information regarding the suspects criminal history and trafficking in drugs, it is believed to be likely the suspect(s) would be armed as is common with narcotics traffickers and the ability for the suspect(s) to obtain a weapon or destroy evidence is likely if entry is delayed.

With the information above Detectives believe that illegal narcotics are being kept and sold from 1008 Caldwell Pl Columbus, OH 43203 Under these above circumstances it would be common to serve a search warrant and recover drugs and drug related evidence. This would be routine, common practice. This search warrant is requested based on the above facts and based on Detective Earl's 13 years of law enforcement experience that includes involvement in several hundred drug related arrests and investigations.

(Sic passim.) (Affidavit in Support of Warrant to Search.) Based on the information in Detective Earl's affidavit, a judge issued a search warrant for 1008 Caldwell Place in Columbus limited to:

Controlled substances included in Schedule I through V, papers indicating occupancy and/or ownership, drug

paraphernalia, drug records, drug monies and/or proceeds, weapons, other evidence of illicit drug trafficking unknown at this time, fruits and/or instrumentalities of drug trafficking, electronic recording and authority to search any person or persons at such location, identities known or otherwise.

(Search Warrant.)

{¶ 5} Detective Earl testified regarding his investigation, and he described meeting with a reliable informant in February 2016 who provided him information that Young was selling narcotics at an apartment complex in Whitehall. This apartment complex had been the subject of numerous drug complaints to police. Detective Earl testified he had used this same informant in the past, resulting in search warrants and arrests related to other drug dealers.

{¶ 6} Based on the information from the informant, Detective Earl testified he placed Young under surveillance, determining 1008 Caldwell Place to be Young's residence after witnessing him coming and going from that address. Once he believed he knew the location of Young's residence, Detective Earl said he set up a controlled drug transaction while Young was under surveillance.

{¶ 7} First, Detective Earl met with the informant and searched him to make sure the informant did not already have contraband on his or her person. Then, Detective Earl testified that Young was at 1008 Caldwell Place, under surveillance, when the informant called to initiate the controlled drug transaction, and the informant identified Young's voice on the call. While under surveillance, officers observed Young leave the residence, drive directly to the location of the controlled drug buy, and complete the drug transaction. The informant was provided with prerecorded money to use in the transaction so that police could locate the money later. Detective Earl testified that officers continued their surveillance after the drug transaction, observing as Young went directly back to 1008 Caldwell Place following the transaction. Based on his observations, Detective Earl testified that the drugs came from 1008 Caldwell Place prior to the transaction, and the prerecorded money returned to 1008 Caldwell Place after the transaction.

{¶ 8} Having witnessed the controlled drug transaction occur, Detective Earl then sought and obtained a warrant for 1008 Caldwell Place; the warrant was executed within 72 hours of the controlled drug transaction. In executing the warrant, Detective Earl

testified that officers had 1008 Caldwell Place under surveillance and watched Young arrive at the residence. At that point, officers placed Young under arrest based on witnessing the controlled drug buy, which Detective Earl testified is done primarily for safety prior to executing the warrant. Once Young was in police custody, Detective Earl said officers executed the search warrant of 1008 Caldwell Place using the keys to the residence that Young had on his person at the time of his arrest. Officers executing the search warrant seized heroin, cocaine, and $482 in cash from 1008 Caldwell Place.

{¶ 9} At the conclusion of the suppression hearing, the trial court overruled Young's motion to suppress. Specifically, the trial court concluded the search warrant was valid as it contained probable cause to search 1008 Caldwell Place, finding a sufficient nexus between the conduct observed and the residence to be searched.

{¶ 10} The following day, September 18, 2018, Young entered a no contest plea to both charges. The trial court accepted Young's plea, found him guilty of both offenses, and sentenced him to an aggregate prison term of four years. The trial court stayed Young's sentence pending appeal, making house arrest a condition of his appeal bond. The trial court journalized Young's convictions and sentence in an October 3, 2018 judgment entry. Young timely appeals.

{¶ 11} Prior to filing his appeal, Young absconded from house arrest, and a capias has been issued. In response to Young's absconding while out on appeal bond, the state filed a motion to dismiss on June 14, 2019, arguing Young's absconding from house arrest disentitled him to an appeal. We address both the merits of Young's appeal and the state's motion below.

## II. Assignment of Error

{¶ 12} Young assigns the following error for our review:

> The lower court erred when it denied Appellant's motion to suppress. All evidence obtained as a result of the unlawful search of Appellant's residence violated the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Sections 14 and 16 of the Ohio Constitution.

## III.  Young's Assignment of Error – Probable Cause for Search Warrant

{¶ 13} In his sole assignment of error, Young argues the trial court erred in overruling his motion to suppress.  More specifically, Young asserts the officers lacked probable cause to obtain the search warrant.

{¶ 14} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 15} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The Ohio Constitution similarly provides at Article I, Section 14 "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

{¶ 16} "When determining whether a search warrant affidavit demonstrates probable cause, a magistrate must ' "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 34, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39.  By contrast, in reviewing the sufficiency of probable cause contained in a search warrant

affidavit, an appellate court must not substitute its judgment for that of the magistrate, "but reviews the warrant 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed,' according 'great deference to the magistrate's determination of probable cause,' and resolving 'doubtful or marginal cases * * * in favor of upholding the warrant.' "  *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 9, quoting *George* at paragraph two of the syllabus.

{¶ 17} "Probable cause means less evidence than would justify condemnation, so that only the 'probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' "  (Internal quotations and emphasis omitted.)  *Eal* at ¶ 10, quoting *George* at 329.  Generally, the issuing judge or magistrate is confined to the averments contained in the supporting affidavit to determine whether probable cause supports a search warrant.  *Id.*; *Neil* at ¶ 34, citing *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 106.

{¶ 18} Young argues the search warrant affidavit here failed to establish probable cause because it did not demonstrate a nexus between the conduct the officers observed and the location ultimately searched.  As the Supreme Court of Ohio has noted, a probable cause determination for a search warrant requires special considerations, including "how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched."  *Castagnola* at ¶ 34.  Further, "[w]hen considering whether a nexus exists between the alleged crime and the place to be searched, ' "the circumstances must indicate why evidence of illegal activity will be found in a particular place." ' "  *State v. Phillips*, 10th Dist. No. 15AP-1038, 2016-Ohio-5944, ¶ 14, quoting *United States v. Washington*, 380 F.3d 236, 240 (6th Cir.2004), quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004). " '[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence.' "  *Phillips* at ¶ 14, quoting *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008).  By contrast, "when 'the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence.' "  *Phillips* at ¶ 14, quoting *Gunter* at 419.

{¶ 19} Young argues the information provided by the confidential informant did not provide probable cause that Young was storing drugs at 1008 Caldwell Place. This court recently considered the question of whether a sufficient nexus exists between a suspected drug dealer's criminal activity and the suspected drug dealer's residence. In *Phillips*, we held that "[t]he temporal proximity between appellant's arrivals to the residence and the controlled drug transactions, combined with Detective Grinstead's experience in narcotics investigations, provided the magistrate with a substantial basis to conclude that a nexus existed between the place to be searched and the alleged criminal activity, and, at the least, probable cause to believe the proceeds of a drug transaction would be located in the residence." *Phillips* at ¶ 26.

{¶ 20} Although we are mindful that probable cause determinations are intensely fact-specific, we find *Phillips* to be directly on point to the issue here. In *Phillips*, a confidential informant disclosed to police officers the identity of a drug dealer. Using the informant's information, police set up a controlled drug transaction between the defendant and the informant, and police surveilled the transaction. The police officers in *Phillips* then kept the defendant under surveillance after he left the controlled drug transaction and went back to a house in Blacklick. That house ultimately became the subject of the search warrant. Additionally, the same detectives, Detective Earl and Detective Guy Grinstead, conducted the investigations and filed the search warrant affidavits both here and in *Phillips*.

{¶ 21} Though Young acknowledges *Phillips*, he nonetheless argues *Phillips* is not controlling here, emphasizing that the informant in Young's case never indicated to police that he had been inside Young's residence and observed the presence of narcotics, and thus the information from the informant was insufficient to establish a nexus to search Young's residence. We note, however, that the informant in *Phillips* similarly did not indicate to police that he had been inside the defendant's residence and personally observed narcotics there. Moreover, despite Young's attempts to distinguish *Phillips*, Young ignores the critical factual information that police did not rely solely on the informant's information in obtaining the search warrant. While using the informant for the controlled drug transaction, police additionally surveilled Young, watching as he departed his residence immediately after the informant's phone call, drove directly to the location of the controlled

transaction, engaged in the controlled transaction, and drove directly back to his residence. Additionally, Detective Earl stated in the affidavit that his significant experience in narcotics investigations led him to believe Young was storing narcotics at the residence, an important consideration in determining whether a nexus exists between the criminal activity and the location to be searched. *Phillips* at ¶ 24-26, citing *United States v. Brown*, 828 F.3d 375 (6th Cir.2016).

{¶ 22} In considering all of these facts under the totality of the circumstances, and mindful of the deference given to a magistrate's decision regarding the existence of probable cause, we find the search warrant affidavit established a sufficient nexus between the alleged criminal activity and the residence to be searched. *See Phillips* at ¶ 25. Accordingly, we conclude the magistrate had a substantial basis to conclude that probable cause existed for the issuance of a search warrant of Young's residence, and the trial court thus did not err in denying Young's motion to suppress. We overrule Young's sole assignment of error.

## IV.  State's Motion to Dismiss

{¶ 23} Also in this case, the state filed a motion to dismiss based on the "fugitive disentitlement doctrine" as a result of Young absconding from the jurisdiction of the court. However, having overruled Young's sole assignment of error, the state's motion to dismiss based upon the "fugitive disentitlement doctrine" is moot. *State v. Bass*, 10th Dist. No. 03AP-1002, 2004-Ohio-2532, ¶ 11 (where an appellate court overrules the appellant's substantive assignments of error, the state's motion to dismiss the appeal based on the "fugitive disentitlement doctrine" is moot).

## V.  Disposition

{¶ 24} Based on the foregoing reasons, the trial court did not err in concluding probable cause existed for the issuance of the search warrant. Having overruled Young's sole assignment of error, rendering moot the state's motion to dismiss, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.