[Cite as *State v. Saxton*, 2019-Ohio-5257.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                     :                  No. 18AP-925
                                            (C.P.C. No. 17CR-4696)
v.                                                     :
                                            (REGULAR CALENDAR)
Troy G. Saxton,                                        :

      Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on December 19, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert,* for appellee. **Argued:** *Daniel J. Stanley.*

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Troy G. Saxton, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to a no contest plea, of possession of cocaine as a major drug offender, possession of heroin as a major drug offender, aggravated possession of drugs, possession of cocaine, possession of heroin, and having a weapon while under disability. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed August 25, 2017, plaintiff-appellee, State of Ohio, charged Saxton with one count of possession of cocaine as a major drug offender in violation of R.C. 2925.11, a first-degree felony; one count of possession of heroin as a major drug offender in violation of R.C. 2925.11, a first-degree felony; one count of aggravated possession of drugs

in violation of R.C. 2925.11, a fifth-degree felony; one count of possession of cocaine in violation of R.C. 2925.11, a first-degree felony, with an accompanying one-year firearm specification; one count of possession of heroin in violation of R.C. 2925.11, a second-degree felony, with an accompanying one-year firearm specification; and one count of having a weapon while under disability in violation of R.C. 2923.13, a third-degree felony. The charges followed the execution of two search warrants in January 2017. One warrant related to a search of 2100 Courtright Road, and the other warrant related to a search of 6144 Stornoway Drive. Saxton initially entered a plea of not guilty.

{¶ 3} On November 28, 2017, Saxton filed a motion to suppress, arguing the officers lacked probable cause to obtain the two search warrants. Specifically, Saxton argued the warrant for 2100 Courtright Road lacked sufficient particularity; the affidavit in support of the search warrant did not establish a nexus between 6144 Stornoway Drive and illegal activity; that the information in the search warrant affidavit had become stale; that the affidavit was deliberately or recklessly misleading; and that officers did not rely on the warrant in good faith. The state opposed the motion, and the trial court set the matter for a hearing.

{¶ 4} At the suppression hearing on May 17, 2018, the state introduced copies of the search warrants for both Courtright Road and Stornoway Drive and the affidavit used to obtain both search warrants. The affidavit was signed by Detective Earl Grinstead of the Whitehall Police Department. In it, Detective Grinstead averred that four separate informants had contacted the narcotics unit of the Whitehall Police with information regarding a large-scale narcotics trafficking operation occurring at the auto body shop located at 2100 Courtright Road. The informants implicated Saxton and Malcolm Sunderland, the co-owners of the body shop, as well as other individuals associated with the body shop.

{¶ 5} The affidavit further stated that based on the information from the informants, Whitehall police set up surveillance of 2100 Courtright Road and observed Saxton regularly come and go from the west door of the body shop. Police observed Saxton drive a GMC Yukon registered in his daughter's name, and a records check revealed Saxton's daughter had criminal cases in 2010 and 2014 involving drugs and a cash seizure of over $40,000. Detective Grinstead averred in the affidavit that throughout the course of

the surveillance, police officers witnessed a "constant flow" of traffic from both pedestrians and vehicles and interactions that resembled drug transactions in the parking lot of the body shop.  (State's Ex. 1, Aff. in Support of Warrant to Search at 2.)

{¶ 6}  Detective Grinstead further averred that police checked Saxton's name and the 2100 Courtright Road address through their records system, and both had been "flagged" by the high intensity drug trafficking area task force ("HIDTA").  Specifically, the affidavit stated that a March 2016 investigation found Saxton "responsible" for the distribution of "multiple kilograms of cocaine" at the 2100 Courtright Road location.  (Aff. in Support of Warrant to Search at 2.)  The 2016 investigation also linked the location of 6144 Stornoway Drive to Saxton, which HIDTA investigators believed to be Saxton's residence.  The HIDTA investigation allowed HIDTA agents to identify several "source dealers" linked to Saxton, and HIDTA agents recovered $36,000 in cash that Saxton had given to a source dealer for a kilogram of cocaine.  (Aff. in Support of Warrant to Search at 3.)  Detective Grinstead then averred in the affidavit that an "indictment for conspiracy to distribute is pending against Troy Saxton" as a result of the HIDTA investigation.  (Aff. in Support of Warrant to Search at 3.)

{¶ 7}  The affidavit also stated that on January 2, 2017, Whitehall police officers set up a controlled buy of crack cocaine at 2100 Courtright Road using an informant.  The informant successfully purchased crack in the parking lot of the body shop from a person named Nick.  Further, the affidavit stated that within 72 hours prior to the affidavit, Whitehall police officers instructed an informant to arrange a controlled buy of cocaine from Saxton at the body shop at 2100 Courtright Road.  Prior to the transaction, officers witnessed Saxton arrive at the body shop and enter through the west door.  A few minutes later, officers observed Saxton come back outside, meet the informant in the parking lot, and escort the informant back inside the body shop.  The informant successfully purchased cocaine while inside the body shop.

{¶ 8}  Following the controlled drug transaction, the affidavit stated Whitehall officers followed Saxton to 6144 Stornoway Drive where he parked his vehicle in the "designated parking spot" for that address and entered the apartment through the rear door.  (Aff. in Support of Warrant to Search at 5.)  Detective Grinstead averred that he believed the proceeds from the drug transaction would be at Saxton's residence along with

drugs and drug-related assets. Additionally, Detective Grinstead noted that the prior HIDTA investigation "shows [Saxton] in and out of [6144 Stornoway Drive] prior to and after suspected drug transactions." (Aff. in Support of Warrant to Search at 5.) Finally, the affidavit noted Saxton's prior criminal history includes several convictions for drug-related offenses, as well as convictions for domestic violence and assault.

{¶ 9} At the suppression hearing, the trial court addressed Saxton's claim that under *Franks v. Delaware*, 438 U.S. 154 (1978), Detective Grinstead's affidavit was deliberately or recklessly misleading. While Saxton argued that the affidavit did not explain that some of the information in the affidavit came from the prior HIDTA investigation, the trial court determined that Saxton failed to show that the affidavit contained any intentional or reckless false statements regarding the HIDTA investigation. However, with the state's agreement, the trial court allowed defense counsel to question Detective Grinstead regarding the statement in the affidavit that "an indictment for conspiracy to distribute cocaine is pending" against Saxton, because Saxton was not under indictment at the time of the affidavit. (May 17, 2018 Tr. at 7.) In response, Detective Grinstead stated that during his investigation into Saxton, HIDTA detectives told him they had a "pending case" with Saxton and "led [him] to believe that they were going to file an indictment against him at the time of [Detective Grinstead's] Whitehall investigation." (May 17, 2018 Tr. at 32.) Further, Detective Grinstead testified he did not intend the "pending" line to be a false statement but intended it to mean that "the investigation is pending and the indictment is pending being filed." (May 17, 2018 Tr. at 48.)

{¶ 10} During the hearing, Detective Grinstead also testified about obtaining the warrant for the body shop at 2100 Courtright Road. Detective Grinstead described the building as having no visible address on the outside, but he knew the 2100 address from the HIDTA investigation, from maps of the area, and from the fact that the building was on the even-numbered side of the road. Though Detective Grinstead agreed officers executing the warrant entered through two separate doors, one on the west side and one on the north side of the building, he testified that he had no reason to believe, prior to entering, that there were multiple addresses associated with the building.

{¶ 11} The warrant authorized a search of:

> 2100 Courtright Road, Columbus, Ohio 43232, A multi room building constructed of block painted gray with red trim. The building has an office door located on the west side of the building that is constructed with wood paneling. There is currently no visible sign or address for the reported auto body shop.

(State's Ex. 1, Warrant to Search.) Detective Grinstead testified that all the drugs seized pursuant to the warrant for 2100 Courtright Road came from the west office, and police seized a firearm from a crate in the mechanic's bay on the opposite side of the building. Detective Grinstead testified that there was no indication that the mechanic's bay was outside the authorized search area of the warrant.

{¶ 12} Following the hearing, the trial court denied Saxton's motion to suppress in a May 31, 2018 decision and entry. Specifically, the trial court found both search warrants were valid and contained probable cause to search both the body shop on Courtright Road and the apartment on Stornoway Drive. As to Saxton's *Franks* challenge, the trial court concluded that the affidavit "clearly" stated which information stemmed from the HIDTA investigation. (Decision at 5.) However, the trial court concluded that a reviewing judge or law enforcement officer would likely interpret the "pending federal indictment" line of the affidavit as suggesting an indictment had already been filed against Saxton, so the trial court struck that line from the affidavit and determined that the remaining content of the affidavit created sufficient probable cause to search both locations. (Decision at 5-6.)

{¶ 13} Subsequently, on June 18, 2018, Saxton entered pleas of no contest to all six counts of the indictment. At the plea hearing, the state provided the following facts: when police apprehended Saxton, he had $635 in cash on his person as well as pills in his jacket pockets and in the console of his vehicle. The search of Stornoway Drive yielded approximately 267 grams of cocaine, 36 grams of heroin, 2,000 grams of "brick-sized" cocaine, another 830 grams of heroin, digital scales, and a drug press. (June 18, 2018 Tr. at 7-8.) Additionally, the search of Courtright Road yielded 68 grams of cocaine, 45 grams of heroin, a digital scale, a notebook with names and addresses, 31 individually wrapped pills, 3 grams of crack cocaine, and a loaded pistol in a crate in the mechanic's bay of the body shop. The trial court accepted Saxton's plea, found him guilty of all six offenses, and

sentenced him to an aggregate prison term of 18 years, journalizing his conviction in a November 1, 2018 judgment entry.  Saxton timely appeals.

## II.  Assignments of Error

{¶ 14}  Saxton assigns the following errors for our review:

> [1.] The trial court erred in denying defendant-appellant's motion to suppress heroin, cocaine, and a firearm seized by law enforcement officers pursuant to search warrants that were issued and executed in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.
>
> [2.] The trial court's failure to merge the two counts of possession of cocaine and the two counts of possession of heroin violated defendant-appellant's rights under the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.
>
> [3.] Defendant-appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

## III.  First Assignment of Error – Motion to Suppress

{¶ 15}   In his first assignment of error, Saxton argues the trial court erred in denying his motion to suppress.

{¶ 16}  " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 17}  The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The Ohio Constitution similarly provides at Article I, Section 14 "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

{¶ 18} Saxton argues the search warrant affidavit here failed to establish probable cause.  More specifically, Saxton asserts the trial court erred in (1) finding the warrant contained probable cause to search 6144 Stornoway Drive; (2) not holding a *Franks* hearing regarding the information linked to the prior HIDTA investigation; and (3) finding there was sufficient particularity in the warrant to describe the area to be searched at 2100 Courtright Road.  We address each of these arguments in turn.

### A.  Probable Cause to Search Stornoway Drive Residence

{¶ 19} Saxton first argues the trial court erred in determining the search warrant contained probable cause to search 6144 Stornoway Drive.

{¶ 20} Ordinarily, "[w]hen determining whether a search warrant affidavit demonstrates probable cause, a magistrate must ' "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 34, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  By contrast, in reviewing the sufficiency of probable cause contained in a search warrant affidavit, an appellate court must not substitute its judgment for that of the magistrate, "but reviews the warrant 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed,' according 'great deference to the magistrate's determination of probable cause,' and resolving 'doubtful or marginal cases * * * in favor of upholding the warrant.' " *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 9, quoting *George* at paragraph two of the syllabus.

{¶ 21} "Probable cause means less evidence than would justify condemnation, so that only the 'probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' "   (Internal quotations and emphasis omitted.) *Eal* at ¶ 10, quoting *George* at 329.   Generally, the issuing judge or magistrate is confined to the averments contained in the supporting affidavit to determine whether probable cause supports a search warrant. *Eal* at ¶ 10; *Neil* at ¶ 34, citing *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 106.

{¶ 22}   However, before we can address probable cause based on the affidavit, we recognize that the trial court determined that the statement in the search warrant affidavit that Saxton "has a pending federal indictment for a conspiracy charge out of the HIDTA investigation (2016)" should be stricken from the affidavit because there was no federal indictment pending against Saxton.  (May 31, 2018 Decision at 5-6.)  When a portion of a search warrant affidavit has been "validly redacted," a reviewing court no longer affords the ordinary "great deference" to the issuing magistrate and instead reviews the sufficiency of the remaining portions of the affidavit under a de novo standard.  *United States v. Elkins*, 300 F.3d 638, 651-52 (6th Cir.2002), citing *United States v. Morehead*, 959 F.2d 1489, 1498 (10th Cir.1992).  Although the state argues the trial court did not validly redact this line from the search warrant because it stopped short of declaring the line to be intentionally or recklessly false or misleading, and thus the standard of review would not change, we find that even under the heightened de novo standard, the search warrant contained probable cause to search Stornoway Drive.

{¶ 23} In reviewing the four corners of the search warrant affidavit minus the redacted language, Saxton argues the affidavit does not establish probable cause because it did not demonstrate a nexus between the conduct the officers observed and the location ultimately searched at Stornoway Drive.  As the Supreme Court of Ohio has noted, a probable cause determination for a search warrant requires special considerations, including "how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *Castagnola* at ¶ 34.  Further, "[w]hen considering whether a nexus exists between the alleged crime and the place to be searched, ' "the circumstances must indicate why evidence of illegal activity will be found in a particular place." ' "   *State v.*

*Phillips*, 10th Dist. No. 15AP-1038, 2016-Ohio-5944, ¶ 14, quoting *United States v. Washington*, 380 F.3d 236, 240 (6th Cir.2004), quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004). " '[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence.' " *Phillips* at ¶ 14, quoting *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008). By contrast, "when 'the only evidence of a connection between illegal activity and the residence is unreliable, such as uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence." *Phillips* at ¶ 14, quoting *Gunter* at 419.

{¶ 24} The search warrant affidavit here contained information that four separate confidential informants provided reliable information that Saxton was trafficking drugs out of the body shop at 2100 Courtright Road. Whitehall police additionally conducted surveillance for two controlled buys involving Saxton at the body shop. The affidavit further stated officers observed Saxton return immediately to 6144 Stornoway Drive after conducting one of the controlled buys. As this court has previously noted in two other cases involving Detective Grinstead, " '[t]he temporal proximity between appellant's arrivals to the residence and the controlled drug transactions, combined with Detective Grinstead's experience in narcotics investigations, provided the magistrate with a substantial basis to conclude that a nexus existed between the place to be searched and the alleged criminal activity, and, at the least, probable cause to believe the proceeds of a drug transaction would be located in the residence.' " *State v. Young*, 10th Dist. No. 18AP-845, 2019-Ohio-4639, ¶ 19, quoting *Phillips* at ¶ 26.

{¶ 25} Additionally, the redacted search warrant affidavit contained ample probable cause to establish 6144 Stornoway Drive was Saxton's residence, despite Saxton's arguments to the contrary. Officers observed Saxton return directly to 6144 Stornoway Drive after conducting the controlled buy, park his vehicle in the address's designated parking spot, and enter through the rear door of the apartment. Moreover, to the extent Saxton argues the search warrant affidavit failed to establish probable cause to search 6144 Stornoway Drive because no one provided police with any information about what might be inside the residence, we have noted that an informant need not indicate having been personally inside a drug dealer's residence and observing narcotics there in order to

establish probable cause to search. *Young* at ¶ 21, citing *Phillips* at ¶ 24-26, citing *United States v. Brown*, 828 F.3d 375 (6th Cir.2016). In addition to the information in the search warrant affidavit that HIDTA agents believed 6144 Stornoway Drive to be Saxton's residence, the Whitehall officers' observations created probable cause both that Saxton resided at the address and that his residence would contain the proceeds of the drug transactions and/or further drug trafficking materials.

{¶ 26} For these reasons, even under a heightened de novo standard of review, we conclude the non-excised portions of the search warrant affidavit established a sufficient nexus between the alleged criminal activity and the residence to be searched. *See Young* at ¶ 22, citing *Phillips* at ¶ 25. Accordingly, we conclude probable cause existed for the issuance of a search warrant of Saxton's residence at 6144 Stornoway Drive, and the trial court did not err in denying Saxton's motion to suppress on that basis.

### B. *Franks* Hearing

{¶ 27} Saxton next argues the trial court erred in not holding a *Franks* hearing. Saxton's motion to suppress asserted, in part, that the search warrant authorizing the search of both locations was invalid because the accompanying affidavit contained false statements. In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court set forth the procedure for challenging the veracity of a search warrant affidavit. Initially, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and * * * the allegedly false statement is necessary to the finding of probable cause." *Franks* at 155-56. This preliminary stage requires the defendant to provide "an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *State v. Roberts*, 62 Ohio St.2d 170, 178 (1980). "This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." *Id.* If the defendant satisfies this preliminary burden, he or she is entitled to a hearing on his motion to suppress. *Franks* at 156.

{¶ 28} Here, the trial court conducted a hearing on Saxton's motion to suppress and permitted questioning of Detective Grinstead related to why he worded the supporting affidavit in certain ways. This line of questioning led the trial court to excise a portion of

the search warrant affidavit.  Nonetheless, Saxton now argues the trial court erred in not granting him a separate hearing on his *Franks* claim.

{¶ 29}  Saxton argued at the trial court that the search warrant affidavit failed to delineate which information came from the HIDTA investigation and which information came from Whitehall Police Department's separate investigation.  Further, Saxton argues the affidavit was intentionally written in a manner intended to deceive the magistrate as to which information came from which investigation.  However, having reviewed the affidavit, we disagree.  The affidavit clearly states which information relates to the prior HIDTA investigation, when and if Whitehall officers relied on that information, and which information resulted from the separate investigation by the Whitehall Police Department.  Thus, Saxton did not make the threshold showing required under *Franks*.  Accordingly, we conclude the trial court did not err in failing to hold a more full *Franks* hearing beyond what it allowed at the suppression hearing.

### C.  Sufficient Particularity for 2100 Courtright Road

{¶ 30}  Finally under this assignment of error, Saxton argues the trial court erred in denying his motion to suppress because the search warrant affidavit did not describe with sufficient particularity the area to be searched at 2100 Courtright Road.

{¶ 31}  Saxton asserts the warrant lacked sufficient particularity because it identified only 2100 Courtright Road but did not account for the building consisting of two units or for the second address linked to the property, 2104 Courtright Road. In addition to the constitutional requirement that a search warrant shall "particularly describe" the place to be searched, Crim.R. 41(C) also requires a search warrant and supporting affidavit to particularly describe the place to be searched.  *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 24 (10th Dist.).

{¶ 32}  "Because a search warrant and supporting affidavit usually contain more information than just an address to identify the intended search target, a search warrant is not necessarily invalid if it describes the property to be searched with an incorrect address." *Gravely* at ¶ 25, citing *State v. Scott*, 7th Dist. No. 02 CA 108, 2003-Ohio-5011, ¶ 22-24. "Rather, to determine whether a property description is constitutionally valid, a trial court must determine whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort,

and whether there is any reasonable probability that another premises might be mistakenly searched." *Gravely* at ¶ 25, citing *State v. Pruitt*, 97 Ohio App.3d 258, 261 (11th Dist.1994).

{¶ 33} Here, the warrant authorized a search of "2100 Courtright Road, Columbus, Ohio 43232, A multi room building constructed of block painted gray with red trim. The building has an office door located on the west side of the building that is constructed with wood paneling. There is currently no visible sign or address for the reported auto body shop." (State's Ex. 1.) As the trial court noted, although Saxton provided evidence that the Franklin County Auditor has now assigned two addresses to the property, he provided no evidence that the building was assigned two separate addresses at the time the warrant was obtained or at the time the property was searched. When, with the benefit of hindsight, it appears that the description of the place to be searched was "broader than appropriate" because it was based on the mistaken belief of the layout of a multi-unit building, "[t]he question is whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). Even if the property here did have two addresses associated with it at the time of the search, there is no indication that the officers knew or "should have known" that the building had two addresses. *Id.* at 85. Additionally, we find the information in the warrant described the premises with sufficient particularity to enable the executing officers to locate and identify the correct premises and to minimize the chances of a mistaken search. *Gravely* at ¶ 30.

{¶ 34} For these reasons, we conclude the trial court did not err in denying Saxton's motion to suppress for lack of sufficient particularity related to 2100 Courtright Road. Having also determined the trial court did not err in denying Saxton's motion to suppress related to Stornoway Drive and his *Franks* challenge, we overrule Saxton's first assignment of error.

## IV. Second Assignment of Error – Merger

{¶ 35} In his second assignment of error, Saxton argues the trial court erred in failing to merge his two cocaine possession counts and his two heroin possession counts. Saxton does not argue the possession counts for the different drugs should merge, just that the possession counts for the same drugs should merge with each other. As the state notes, Saxton did not raise any merger issue in the trial court, and thus our review is limited to

plain error.  *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 6, citing *State v. Taylor*, 10th Dist. No. 10AP-939, 2011-Ohio-3162, ¶ 34.  A trial court's failure to merge convictions on allied offenses constitutes plain error.  *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 36} In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, an appellate court review's the trial court's R.C. 2941.25 determination de novo.  *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions.  That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' " *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 37} R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 38} Saxton argues the trial court erred when it failed to merge the offenses of possession of cocaine as a major drug offender and possession of cocaine as well as for failing to merge the offense of possession of heroin as a major drug offender and possession of heroin.  "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense.  When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 39} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus,

and the import."  *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus.  "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation."  *Ruff* at ¶ 25.  Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge.  *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 40} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct.  "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant.  In other words, how were the offenses committed?"  *Ruff* at ¶ 25.

{¶ 41} Here, Saxton argues we need not engage in the *Ruff* analysis because R.C. 2925.11, the possession statute, indicates a legislative intent to calibrate the punishment for the offense based on the aggregate drug weight.  In support of this argument, Saxton relies on *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, which states it is not necessary to resort to an analysis under the multiple counts statute when the legislature's intent on multiplicity of indictments "is clear from the language of the [offense] statute."  *Miranda* at ¶ 10.  We are mindful that *Miranda* predates *Ruff*, but we nonetheless will address Saxton's argument about aggregating the quantities of drugs.

{¶ 42} Saxton was convicted of one count of possession of cocaine as a major drug offender and one count of possession of cocaine as a first-degree felony, as well as one count of possession of heroin as a major drug offender and one count of possession of heroin as a second-degree felony.  All of these offenses are violations of R.C. 2925.11.  To trigger major drug offender status, which carries a mandatory 11-year prison term, an offender must possess an amount that equals or exceeds 100 grams of cocaine or 100 grams of heroin.  R.C. 2925.11(C)(4)(f); R.C. 2925.11(C)(6)(f).  Separately, for possession of cocaine to be a first-degree felony but without major drug offender status, an offender must possess an amount of cocaine that equals or exceeds 27 grams but is less than 100 grams.  R.C.

2925.11(C)(4)(e). Additionally, for possession of heroin to be a second-degree felony an offender must possess an amount of heroin that equals or exceeds 10 grams but is less than 50 grams. R.C. 2925.11(C)(6)(d).

{¶ 43} Saxton essentially argues that once the state is able to charge an offender as a major drug offender, all of the possession charges for that same drug must necessarily aggregate into one amount and the state cannot convict the offender of additional possession counts. However, as the state notes, the separate charges in the indictment relate to the separate searches of Stornoway Drive and Courtright Road. The amount of cocaine and heroin seized at Stornoway Drive, on its own, was enough to trigger major drug offender status for each of those drugs: more than 2,000 grams of cocaine and more than 830 grams of heroin. At a separate geographic location, Courtright Road, police then seized additional amounts of cocaine and heroin in amounts sufficient to charge Saxton with first-degree felony possession of cocaine and second-degree felony possession of heroin: specifically, 68 grams of cocaine and 45 grams of heroin. Thus, the state did not rely on aggregating the quantities of the drugs seized at the two locations in order to authorize charging Saxton as a major drug offender. Despite Saxton's *Miranda* argument, we do not read R.C. 2925.11 as evincing an intent to preclude additional possession charges once the major drug offender threshold has been reached and the offender possessed the additional drugs at a separate geographic location. Accordingly, we do not agree with Saxton that the *Ruff* analysis does not apply here.

{¶ 44} The second prong of the *Ruff* analysis provides that offenses do not merge if the offenses were committed separately. *Ruff* at ¶ 25. Here, the amount of cocaine and heroin supporting the major drug offender charges was separately packaged, in a separate geographic location, recovered at separate times, and as a result of separate searches than the non-major drug offender possession charges. Under these circumstances, we find that the two sets of offenses were committed separately. *State v. Stoermer*, 2d Dist. No. 2017-CA-93, 2018-Ohio-4522, ¶ 27-28 (where the same drug was separately packaged and found in "two geographically separate locations" at separate times and as a result of separate searches, the two counts for possession of the same drug do not merge). Accordingly, the offenses were not allied offenses, and Saxton may be convicted and sentenced for both sets of offenses. The trial court, therefore, did not plainly err when it did not treat Saxton's two

cocaine possession convictions or his two heroin possession convictions as allied offenses. We overrule his second assignment of error.

## V. Third Assignment of Error – Ineffective Assistance of Counsel

{¶ 45} In his third and final assignment of error, Saxton argues he received the ineffective assistance of counsel. More specifically, Saxton asserts his trial counsel was ineffective in failing to file a motion to suppress his statements to police following his arrest and in failing to make a merger argument at the trial court.

{¶ 46} In order to prevail on a claim of ineffective assistance of counsel, Saxton must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Saxton to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Saxton can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Saxton must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 47} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Saxton contends his trial counsel was ineffective in (1) failing to file a motion to suppress his statements to police following his arrest and (2) failing to request merger of the two cocaine possession counts with each other and the two heroin possession counts with each other.

### A. Failure to File Motion to Suppress Statements to Police

{¶ 48} Saxton's first allegation of ineffective assistance of counsel is his trial counsel's failure to file a motion to suppress the statements Saxton made to police following his arrest in which he admitted to possession of the drugs. The failure to file a motion to suppress may constitute ineffective assistance of counsel when the record demonstrates that the motion would have been granted had trial counsel filed it. *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 53, citing *State v. Hawkins*, 10th Dist. No. 15AP-35,

2016-Ohio-1404, ¶ 93. Similarly, the failure to raise a particular argument in support of a motion to suppress may constitute ineffective assistance of counsel when it appears from the record that the motion would have been granted had the argument been raised. *Id.* However, " '[c]ounsel is not deficient for failing to raise a meritless issue.' " *Neil* at ¶ 53, quoting *State v. Massey*, 10th Dist. No. 12AP-649, 2013-Ohio-1521, ¶ 13.

{¶ 49} Saxton asserts his arrest was unconstitutional because officers lacked probable cause for his arrest, and thus his trial counsel should have filed a motion to suppress the statements he made following his allegedly unconstitutional arrest. However, as we explained in our resolution of Saxton's first assignment of error, the search warrant affidavit contained ample probable cause that Saxton had committed and was engaged in numerous drug offenses. Thus, the same facts that created probable cause for police to secure the search warrants, including police conducting surveillance on Saxton's controlled drug transactions, also created probable cause for police to conduct a warrantless arrest of Saxton in a public place. *See State v. Taylor*, 10th Dist. No. 18AP-7, 2019-Ohio-2018, ¶ 8 (internal quotations omitted) ("[p]robable cause for a warrantless arrest exists if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual has committed or was committing an offense").

{¶ 50} Additionally, to the extent Saxton argues his arrest was unconstitutional because police could have instead obtained a warrant for his arrest, this court has considered and rejected such an argument for warrantless arrests. *Taylor* at ¶ 14 (holding that "a warrantless arrest that is based on probable cause and occurs in a public place does not violate the Fourth Amendment" even if police would have had time to first obtain a warrant).

{¶ 51} Saxton also argues his arrest was unconstitutional because Whitehall police officers arrested him within the territorial limits of Gahanna. However, R.C. 2935.04 provides that "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." The Supreme Court of Ohio has held that the felony arrest statute applies to a law enforcement officer outside his or her jurisdiction. *State v. Wac*, 68 Ohio St.2d 84,

87-88 (1981) (where probable cause exists at the time of the arrest, the arrest is "permissible both constitutionally and under the felony arrest statute").

{¶ 52} For all of these reasons, we find that Saxton's arrest was not unconstitutional. Accordingly, any motion to suppress Saxton's statements to police on the basis that his arrest was unconstitutional would not have been granted. Thus, Saxton's trial counsel was not deficient for failing to file such a motion to suppress.

### B. Failure to Raise Merger Argument

{¶ 53} Finally, Saxton argues his trial counsel was ineffective for failing to raise a merger argument in the trial court related to his cocaine possession convictions and his heroin possession convictions. Saxton's argument reflects the argument he made under his second assignment of error on appeal. Because Saxton's trial counsel did not raise the merger issue in the trial court, we reviewed Saxton's argument under a plain error standard, and, in disposing of that argument, we concluded Saxton was unable to demonstrate plain error. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. Having previously held, in addressing Saxton's second assignment of error, that the trial court did not plainly err when it did not merge his convictions, we conclude Saxton's argument in this regard fails to satisfy the second prong of the *Strickland* test. *State v. Abdullahi*, 10th Dist. No. 18AP-222, 2018-Ohio-5146, ¶ 49.

{¶ 54} Thus, because Saxton cannot satisfy the *Strickland* test, Saxton's claim of ineffective assistance of counsel must fail. Accordingly, we overrule Saxton's third and final assignment of error.

### VI. Clerical Error

{¶ 55} The judgment entry in this case states Saxton entered a plea of guilty when the record indicates he entered a plea of no contest. We find this to be a clerical error. *See State v. Mobley*, 10th Dist. No. 18AP-205, 2018-Ohio-4678, ¶ 7, fn. 2 (correction of an entry to accurately reflect that defendant had pled "no contest" rather than "guilty" is the correction of a clerical error appropriate for a nunc pro tunc entry). Thus, despite having overruled the merits of Saxton's three assignments of error, we nonetheless must remand

the matter for the trial court to file a nunc pro tunc entry to correct the clerical mistake relating to the nature of Saxton's plea.

## VII. Disposition

{¶ 56} Based on the foregoing reasons, the trial court did not err in denying Saxton's motion to suppress, in not merging his convictions for possession of cocaine with each other and his convictions of possession of heroin with each other, and Saxton did not receive the ineffective assistance of counsel. Having overruled Saxton's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas but remand to that court for the limited purpose of issuing a nunc pro tunc entry correcting Saxton's judgment entry.

*Judgment affirmed; cause remanded.*

KLATT, P.J., and SADLER, J., concur.